1  Adam Y. Siegel (SBN 238568)
   Adam.Siegel@jacksonlewis.com
2  Kishaniah Dhamodaran (SBN 331001)
   Kishaniah.Dhamo@jacksonlewis.com
3  **JACKSON LEWIS P.C.**
   725 South Figueroa Street, Suite 2500
4  Los Angeles, California 90017-5408
   Telephone: (213) 689-0404
5  Facsimile: (213) 689-0430

6  Attorneys for Defendant
   PARSEC, INC. D/B/A OHIO PARSEC, INC.
7

8                   UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

10

| | |
|---|---|
| TYRONE JOHNSON, TERRENCE KENNEDY, individually, and on behalf of other members of the general public similarly situated;<br><br>Plaintiffs,<br><br>vs.<br><br>PARSEC, INC. D/B/A OHIO PARSEC, INC., an Ohio corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 2:22-cv-6930<br><br>**DEFENDANT PARSEC, INC. D/B/A OHIO PARSEC, INC.'S NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, AND 1453 (CAFA)**<br><br>*(Filed concurrently with Civil Case Cover Sheet; Corporate Disclosure Statement; Notice of Interested Parties; and Declarations of Kishaniah Dhamodaran and Jessica Fouse)*<br><br>Complaint Filed: August 8, 2022 |

**TO THE HONORABLE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND PLAINTIFFS TYRONE JOHNSON AND TERRENCE KENNEDY AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant PARSEC, INC. D/B/A OHIO PARSEC, INC. ("Defendant") hereby invokes this Court's jurisdiction under the provisions of 28

U.S.C. §§ 1332(d), 1441, 1446, and 1453, and removes the above-entitled action from the Superior Court of the State of California for the County of Los Angeles ("Los Angeles Superior Court") based on the Class Action Fairness Act of 2005 ("CAFA"). Defendant submits this Notice of Removal without waiving any defenses to the claims asserted by Plaintiffs TYRONE JOHNSON and TERRENCE KENNEDY ("Plaintiffs") and without conceding Plaintiffs have pled claims upon which relief can be granted. This removal is based on the following grounds:

1. On August 8, 2022, Plaintiffs filed an unverified Class Action Complaint against Defendant in the Los Angeles Superior Court entitled *Tyrone Johnson, et al. v. Parsec, Inc. d/b/a/ Ohio Parsec, Inc.*, Case No.: 22STCV25562, which sets forth the following causes of action: (1) Unpaid Overtime; (2) Unpaid Meal Period Premiums; (3) Unpaid Rest Period Premiums; (4) Unpaid Minimum Wages; (5) Final Wages Not Timely Paid; (6) Wages Not Timely Paid During Employment; (7) Non-Compliant Wage Statements; (8) Failure to Keep Requisite Payroll Records; (9) Unreimbursed Business Expenses; and (10) Unfair Competition (the "Complaint"). A true and correct copy of Plaintiffs' Complaint filed in the action is attached as **Exhibit A** to the Declaration of Kishaniah Dhamodaran ("Dhamodaran Decl.") filed concurrently with this Notice of Removal. (Dhamodaran Decl., ¶ 2.)

2. Plaintiffs brought this action on behalf of themselves and all other members of various classes consisting of "current and former hourly-paid or non-exempt employees who worked for [Defendant] within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment and who reside in California" (collectively referred to herein as "Putative Class Members" or the "Putative Class"). (**Exhibit A**, Complaint, ¶¶ 13–14.)

3. Plaintiffs' served the Summons and Complaint on August 24, 2022 via personal service. True and correct copies of the Summons, Complaint, and all court documents filed in the Los Angeles Superior Court and received by Defendant to date are attached as **Exhibit B** to the Dhamodaran Declaration. (Dhamodaran Decl., ¶¶ 3 and 5.)

4. Defendant filed an Answer in response to Plaintiffs' Complaint in the Los Angeles Superior Court on September 22, 2022. A true and correct copy of Defendant's Answer to Plaintiffs' Complaint is attached as **Exhibit C** to the Dhamodaran Declaration. (Dhamodaran Decl., ¶ 4.)

5. Defendant is not aware of any individual or entity being substituted in as a Doe defendant in this action. (Dhamodaran Decl., ¶ 6.)

## TIMELINESS OF REMOVAL

6. This Notice of Removal has been filed within thirty (30) days after Defendant was first served with a copy of Plaintiffs' Summons and Complaint on August 24, 2022 upon which the instant action is based. Therefore, it has been filed within the time period mandated by 28 U.S.C. § 1446(b). *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999) ("[T]he defendant's period for removal will be no less than 30 days from service...").

## VENUE

7. This action was filed in the Los Angeles Superior Court. Pursuant to 28 U.S.C. § 1441(a), Defendant is removing this action to the United States District Court for the Central District of California as the district "embracing the place where [the] action is pending."

8. Venue of this action lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1441, *et seq.* and 1391(a) because this is the judicial district of the court in which the action arose and where Plaintiffs reside. (*See* **Exhibit A**, Complaint, ¶ 5–6; Declaration of Jessica Fouse ("Fouse Decl.") ¶ 8.)

## REMOVAL BASED ON CLASS ACTION FAIRNESS ACT

9. Removal of this action is proper under CAFA, 28 U.S.C. §§ 1332, *et seq.* Section 4 of CAFA, 28 U.S.C. § 1332(d)(2), has been amended to read, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

10. In addition, CAFA provides for jurisdiction in the district courts only where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities. 28 U.S.C. § 1332 (d)(5).

11. As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d), in that it is a civil action filed as a class action involving more than 100 members, the matter in controversy—based on the allegations in the Complaint—exceeds the sum of $5,000,000, exclusive of interest and costs, and Plaintiffs are citizens of a state different from Defendant. *See* 28 U.S.C. §§ 1332(d) and 1453.

### A. None Of The Named Defendants Are Government Entities.

12. Defendant is not a State, State official, or any other governmental entity. (Fouse Decl. ¶ 6.)

### B. Minimal Diversity Is Satisfied Under CAFA.

13. The standard for establishing diversity of citizenship under CAFA is different than diversity jurisdiction under 28 U.S.C. § 1332(a)–(c). CAFA's diversity requirement is satisfied when there is minimal diversity, *i.e.*, when at least one member of a class of plaintiffs is a citizen of a state in which none of the defendants are citizens. 28 U.S.C. § 1332(d)(2); *see Snyder v. Harris*, 394 U.S. 332, 340 (1969) ("if one member of a class is of diverse citizenship from the class's opponent, and no nondiverse members are named parties, the suit may be brought in federal court even though all other members of the class are citizens of the same State as the defendant."); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090–91 (holding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)); *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[Defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal.").

14. Citizenship of the parties is determined by their citizenship status at the action's commencement. *See Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).

15. For individuals, citizenship is determined by a person's domicile. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). While residence and citizenship are not the same, a person's place of residence is *prima facie* evidence of his or her citizenship. *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519–20 (10th Cir. 1994); *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, at *22 (E.D. Cal. 2008). Furthermore, a person's intention to remain may be established by his or her place of employment. *Youn Kyung Park v. Holder*, 572 F.3d 619, 625 (9th Cir. 2009); *see also Francisco v. Emeritus Corp.*, No. CV 17-02871-BRO (SSx)), 2017 U.S. Dist. LEXIS 90131, at *10 (C.D. Cal. June 12, 2017).

16. Defendant is informed and believes that Plaintiff Tyrone Johnson was—at the time this action was commenced—and still is "an individual residing in the State of California, County of Los Angeles." (**Exhibit A**, Complaint, ¶ 5.)

17. Defendant is informed and believes that Plaintiff Terrence Kennedy was—at the time this action was commenced—and still is "an individual residing in the State of California, County of Los Angeles." (**Exhibit A**, Complaint, ¶ 6.)

18. Accordingly, for purposes of removal under CAFA, Plaintiffs are citizens of California.

19. For purposes of removal under CAFA, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c). With respect to ascertaining a corporation's principal place of business, the United States Supreme Court has adopted the "nerve center test." *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81 (2010). Under the nerve center test, a corporation's principal place of business is where a corporation's high-level officers direct, control and coordinate the corporation's activities. *Id.* A corporation can only have one "nerve center." *Id.* at 93–94. In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control, and coordination of the company and will no longer weigh corporate functions, assets, or revenues in each state. *Id.*

5
NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT

20. Defendant—including the time this action was commenced and the time it was removed to federal court—is a citizen of Ohio within the meaning of Section 1332(c) because it was at all times a corporation formed under the laws of the State of Ohio. (Fouse Decl., ¶ 5.) At all relevant times, Defendant's company headquarters, and thus its principal place of business, has been in the State of Ohio. (*Id.*) The State of Ohio is where Defendant's high-level officers, including its President and Chief Executive Officer, direct, control, and coordinate the company's activities. (*Id.*) Defendant's executive operations are managed from the State of Ohio, including, but not limited to, strategic planning, contract negotiation and administration, corporate finance, payroll benefits administration, marketing, budgeting, labor union administration information technology, and general business operations. (*Id.*) Accordingly, for purposes of removal under CAFA, Defendant is a citizen of the State of Ohio, and not a citizen of the State of California.

21. Given the above, minimal diversity exists under CAFA because at least one member of the Putative Class was—at the time this action was commenced and is still believed to be—a citizen of the State of California, while Defendant was and still is a citizen of the State of Ohio.[1] 28 U.S.C. § 1332(d)(2).

**C. The Putative Class Contains More Than 100 Members.**

22. CAFA provides that the district courts shall not have jurisdiction over class actions where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5).

23. Here, Defendant's records identify at least 2,527[2] individuals who are or were employed by Defendant as non-exempt or hourly-paid employees in California between August 8, 2018 (four years prior to the filing of the Complaint) and the present (the "Putative Class Period"). (Fouse Decl., ¶ 10.) Accordingly, the numerosity requirement for jurisdiction under CAFA is satisfied.

---

[1] The citizenship of the Doe defendants is immaterial for the purpose of determining minimal diversity under CAFA. 28 U.S.C. § 1441(a); *see Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007).

[2] This number is up to date as of September 8, 2022.

/ / /

/ / /

/ / /

### D. The Amount In Controversy Exceeds $5,000,000 Based On A Plausible Reading Of The Allegations Of The Complaint.[3]

24. Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. REP. 109–14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case….Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly….").

25. In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiffs will prevail on each and every one of their claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp. 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of

---

[3] Defendant denies each and every allegation set forth by Plaintiffs in the Complaint, and deny that Plaintiffs or Putative Class Members are entitled to any compensatory or statutory damages, restitution, civil penalties, attorneys' fees, or any other relief. Defendant also denies that this action can proceed as a class or representative action. Notwithstanding the above, removal of this action is proper given that removal is based on the allegations asserted in the complaint.

an open-ended claim")). Moreover, the argument and facts set forth herein may appropriately be considered in determining whether the jurisdictional amount in controversy is satisfied. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843, n.1 (9th Cir. 2002) (citation omitted).

26. Notably, "[t]here is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007). Rather, a defendant seeking removal must prove by a preponderance of the evidence that the aggregate amount in controversy exceeds the jurisdictional minimum. *Rodriguez v. AT&T Mobility Servs. Ltd. Liab. Co.*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard"); *see Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."); *Arias v. Residence Inn*, 936 F.3d 920, 922, 925 (9th Cir. 2019) (the removing defendant may rely on reasonable assumptions in estimating the amount in controversy, which "need not be proven").

27. In *Dart Cherokee Basin Operating Company, LLC v. Owens*, the United States Supreme Court held that if the complaint is silent as to whether the amount in controversy meets CAFA's jurisdictional threshold of $5,000,000, "a defendant's notice of removal need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 135 S. Ct. 547, 554 (2014) (emphasis added). Following *Dart*, the Ninth Circuit confirmed "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements," and further that "when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions." *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 963 (9th Cir. 2020) (citations and internal quotation marks omitted). Further, "'[n]o "antiremoval presumption attends cases invoking CAFA' because 'Congress enacted [CAFA] to facilitate adjudication of

certain class actions in federal court.'" *Adams v. Toys 'R' US – Delaware, Inc.*, 2015 U.S. Dist. LEXIS 11338, at *5-6 (N.D. Cal. Jan. 29, 2015) (*quoting Dart*, 135 S. Ct. at 554). On the contrary, courts are required to interpret CAFA's provisions broadly in favor of removal. *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183–84 (9th Cir. 2015).

28. Moreover, if a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise. *See Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *12–13 (E.D. Cal. Apr. 30, 2007) ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also Arreola v. The Finish Line*, No. 14- CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy— such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

29. Here, without admitting Plaintiffs could recover any damages whatsoever, a plausible[4] reading of the Complaint conservatively places an aggregate amount in controversy exceeding **$15,083,513.42** exclusive of attorneys' fees, interest, and costs, as follows:

---

[4] *See Lucas v. Michael Kors (USA) Inc.*, No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *8 (C.D. Cal. May 9, 2018) ("Defendants may use reasonable assumptions in calculating the amount in controversy for purposes of removal.").

   a. <u>First Cause of Action – Unpaid Overtime</u>: Plaintiffs allege the following: (1) "Defendant[] hired Plaintiffs and the other class members, classified them as hourly-paid or non-exempt employees, and failed to compensate them for all hours worked and missed meal periods and/or rest breaks" (**Exhibit A**, Complaint, ¶ 21); (2) "Defendant[] knew or should have known that Plaintiffs and the other class members were entitled to receive certain wages for overtime compensation and that they were not receiving accurate overtime compensation for all overtime hours worked" (*Id.*, ¶ 28); (3) "Defendant[] failed to use the shift differential pay/commissions/non-discretionary bonuses/non-discretionary performance pay to calculate the regular rate of pay used to calculate the overtime rate for the payment of overtime wages where Plaintiff[s] and the other class members earned shift differential pay/commissions/non-discretionary bonuses/non-discretionary performance pay and overtime wages in the same workweek" (*Id.*, ¶ 29); (4) "Plaintiffs and the other class members worked in excess of eight (8) hours in a day, and/or in excess of forty (40) hours in a week" (*Id.*, ¶ 60); (5) "Defendant[] intentionally and willfully failed to pay overtime wages owed to Plaintiffs and the other class members" (*Id.*, ¶ 61); and (6) "Plaintiffs and the other class members are entitled to recover unpaid overtime compensation, as well as interest, costs, and attorneys' fees." (*Id.*, ¶ 63.) Thus, based on the allegations in the Complaint, it is plausible that Plaintiffs are seeking to recover at the very least half an hour of overtime per week for all Putative Class Members, which would place over **$1,985,012.21** in controversy in connection with their overtime claim ($16.50 [$11.00 minimum hourly wage rate[5] x 1.5] x 0.5 hour per workweek x 240,607.54[6] workweeks). (Fouse Decl., ¶ 10.)

---

[5]  For purposes of calculating the amount in controversy in this Notice of Removal, Defendant conservatively utilized the lowest applicable minimum wage rate in effect during the Putative Class Period ($11 per hour in 2018) for all calculations. *See* California Department of Industrial Relations History of California Minimum Wage Chart (https://www.dir.ca.gov/dlse/faq_minimumwage.htm).

[6]  This number indicates the total number of weeks worked by all Putative Class Members between August 8, 2018 and September 8, 2022.

   b. <u>Second Cause of Action – Unpaid Meal Period Premiums</u>: Plaintiffs allege that: (1) "Defendant[] hired Plaintiffs and the other class members, classified them as hourly-paid or non-exempt employees, and failed to compensate them for all hours worked and missed meal periods" (**Exhibit A**, Complaint, ¶ 21); (2) "[efendant[] engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees within the State of California…[which involved]…failing to pay them for…missed meal periods" (*Id.*, ¶ 27); (3) "Defendant[] failed to provide Plaintiffs and the other class members all required…meal periods during the relevant time period" (*Id.*, ¶ 30); (4) "[Defendant] knew or should have known that Plaintiffs and the other class members were entitled to receive all meal periods or payment of one additional hour of pay at Plaintiffs' and the other class members' regular rate of pay when a meal period was missed, and they did not receive all meal periods or payment of one additional hour of pay at Plaintiffs' and the other class members' regular rate of pay when a meal period was missed" (*Id.*, ¶ 31); (5) "Plaintiffs and the other class members who were scheduled to work for a period of time no longer than six (6) hours, and who did not waive their legally-mandated meal periods by mutual consent, were required to work for periods longer than five (5) hours without an uninterrupted meal period of not less than thirty (30) minutes" (*Id.*, ¶ 69); (6) "Plaintiffs and the other class members who were scheduled to work for a period of time in excess of six (6) hours were required to work for periods longer than five (5) hours without an uninterrupted meal period of not less than thirty (30) minutes" (*Id.*, ¶ 70); (7) "Defendant[] intentionally and willfully required Plaintiffs and the other class members to work during meal periods and failed to compensate Plaintiffs and the other class members the full meal period premium for work performed during meal periods" (*Id.*, ¶ 71); (8) "Defendant[] failed to pay Plaintiffs and the other class members the full meal period premium due" (*Id.*, ¶ 72); and (9) "Plaintiffs and the other class members are entitled to recover from Defendant[] one additional hour of pay at the employee's regular rate of compensation for each work day that the meal…period is not provided." (*Id.*, ¶ 74.) Based on the allegations in the Complaint, it is plausible that Plaintiffs are seeking to recover at

the very least one meal period premium every other week for all Putative Class Members, which would place **$1,323,341.47** in controversy in connection with their unpaid meal period premiums claim ($11.00 minimum wage hourly rate x 1 meal period penalty every other week x 120,303.77 weeks [240,607.54 workweeks ÷ 2]).

   c. <u>Third Cause of Action – Unpaid Rest Period Premiums</u>: Plaintiffs allege as follows: (1) "Defendant[] hired Plaintiffs and the other class members, classified them as hourly-paid or non-exempt employees, and failed to compensate them for all hours worked and missed…rest breaks" (**Exhibit A**, Complaint, ¶ 21); (2) "Defendant[] engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees within the State of California…[which involved]…failing to pay them for…missed…rest breaks" (*Id.*, ¶ 27); (3) "Defendant[] failed to provide Plaintiffs and the other class members all required rest…periods during the relevant time period" (*Id.*, ¶ 30); (4) "Defendant[] knew or should have known that Plaintiffs and the other class members were entitled to receive all rest periods or payment of one additional hour of pay at Plaintiffs[] and the other class members' regular rate of pay when a rest period was missed, and they did not receive all rest periods or payment of one additional hour of pay at Plaintiffs[] and the other class members' regular rate of pay when a rest period was missed" (*Id.*, ¶ 32); (5) "Defendant[] required Plaintiffs and other class members to work four (4) or more hours without authorizing or permitting a ten (10) minute rest period per each four (4) hour period worked" (*Id.*, ¶ 79); (6) "Defendant[] willfully required Plaintiffs and the other class members to work during rest periods and failed to pay Plaintiffs and the other class members the full rest period premium for work performed during rest periods" (*Id.*, ¶ 80); (7) "Defendant[] failed to pay Plaintiffs and the other class members the full rest period premium due" (*Id.*, ¶ 81); and (8) "Plaintiffs and the other class members are entitled to recover from Defendant[] one additional hour of pay at the employee's regular rate of compensation for each work day that the rest period was not provided." (*Id.*, ¶ 83.) Based on the allegations in the Complaint, it is plausible that Plaintiffs are seeking to recover at the very least one rest period premium every other week for all Putative Class Members,

which would place **$1,323,341.47** in controversy in connection with their unpaid rest period premiums claim ($11.00 minimum wage hourly rate x 1 rest period penalty every other week x 120,303.77 weeks [240,607.54 workweeks ÷ 2]).

///

        d.    <u>Fourth Cause of Action – Unpaid Minimum Wages</u>: Plaintiffs allege the following: (1) "Defendant[] hired Plaintiffs and the other class members, classified them as hourly-paid or non-exempt employees, and failed to compensate them for all hours worked and missed meal periods and/or rest breaks" (**Exhibit A**, Complaint, ¶ 21); (2) "Defendant[] engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees within the State of California…[which involved]…failing to pay them for all regular and/or overtime wages earned…" (*Id.*, ¶ 27); (3) "Defendant[] knew or should have known that Plaintiffs and the other class members were entitled to receive at least minimum wage for compensation and that they were not receiving at least minimum wages for all hours worked" (*Id.*, ¶ 34); (4) "Defendant[] rounded the work time recorded by Plaintiff[s] and the other class members in a manner that was not fair and neutral on its face and/or that favored Defendant[] over time, resulting in Plaintiff[s] and the other class members being underpaid for their time worked" (*Id.*, ¶ 35); (5) "Defendant[] failed to pay minimum wage to Plaintiffs and the other class members as required, pursuant to California Labor Code sections 1194, 1197, and 1197.1" (*Id.*, ¶ 85); and (6) "Plaintiffs and the other class members are entitled to recover the unpaid balance of their minimum wage compensation as well as interest, costs, and attorney's fees, and liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon." (*Id.*, ¶ 87). Thus, based on the allegations in the Complaint, it is plausible that Plaintiffs are seeking to recover at the very least half an hour of minimum wage per week for all Putative Class Members, which would place over **$1,323,341.47** in controversy in connection with their minimum wage claim ($11.00 minimum wage hourly rate x 0.5 hour per workweek x 240,607.54 workweeks plus an equal amount in liquidated damages).

     e.    <u>Fifth Cause of Action – Final Wages Not Timely Paid</u>: Plaintiffs allege that: (1) "Defendant[] knew or should have known that Plaintiffs and the other class members were entitled to receive all wages owed to them upon discharge or resignation, including overtime and minimum wages and meal and rest period premiums, and they did not, in fact, receive all such wages owed to them at the time of their discharge or resignation" (**Exhibit A**, Complaint, ¶ 36); (2) "Defendant[] intentionally and willfully failed to pay Plaintiffs and the other class members who are no longer employed by Defendant[] their wages, earned and unpaid, within seventy-two (72) hours of their leaving [Defendant's] employ" (*Id.*, ¶ 93); and (3) "Plaintiffs and the other class members are entitled to recover from Defendant[] the statutory penalty wages for each day they were not paid, up to to a thirty (30) day maximum pursuant to California Labor Code section 203." (*Id.*, ¶ 95.) During the applicable three-year statute of limitations period (*i.e.*, August 8, 2019 to the present), at least **1,033** Putative Class Members have been terminated, resigned, or have otherwise separated from their employment with Defendant ("Putative Section 203 Penalties Sub-Class Members"). (Fouse Decl., ¶ 11.) Thus, based on the allegations in the Complaint, it is plausible that Plaintiff has placed over **$4,341,376.80** in controversy in connection with their claim for waiting time penalties (1,033 Putative Section 203 Sub-Class Members x $17.51 average hourly rate of Putative Section 203 Sub-Class Members at the time of separation x 8 hours x 30 days). (*Id.*)

     f.    <u>Seventh Cause of Action – Non-Compliant Wage Statements</u>: Plaintiffs allege as follows: (1) "Defendant[] knew or should have known that Plaintiffs and the other class members were entitled to complete and accurate wage statements in accordance with California law, but, in fact, they did not receive complete and accurate wage statements from Defendant[]" (**Exhibit A**, Complaint, ¶ 38); (2) "Defendant[] [has] intentionally and willfully failed to provide Plaintiffs and the other class members with complete and accurate wage statements [and] the deficiencies include, but are not limited to: the failure to include the total number of hours worked by Plaintiffs and the other class members" (*Id.*, ¶ 104); (3) "Plaintiffs and the other class members have suffered injury and damage

to their statutorily-protected rights" (*Id.*, ¶ 105); and (4) "Plaintiffs and other class members are entitled to recover from Defendant[] the greater of their actual damages caused by [Defendant's] failure to comply with California Labor Code section 226(a), or an aggregate penalty not exceeding four thousand dollars per employee." (*Id.*, ¶ 107.) California Labor Code § 226(e)(1) provides:

> "An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees."

Here, based on a review of Defendant's payroll records, there are at least **65,738** pay periods applicable to the **1,501** Putative Class Members who worked during the one-year statute of limitations period under California Labor Code section 226 (i.e., August 8, 2021 to the present). (Fouse Decl., ¶ 12.) Thus, based on the allegations in the Complaint, it is plausible that Plaintiffs have placed over **$4,787,100.00** in controversy in connection with their wage statement claim ($50 per first wage statement x 1,501 Putative Class Members who worked between August 8, 2021 and present, plus $100 per each subsequent wage statement x 65,738 pay periods worked by Putative Class Members between August 8, 2021 and present, up to a maximum of $4,000 per Putative Class Member). California Labor Code § 226(e)(1); *see also Moppin v. Los Robles Reg'l Med. Ctr.*, No. EDCV 15-1551 JGB (DTBx), 2015 U.S. Dist. LEXIS 129574, at *10 (C.D. Cal. Sep. 24, 2015) (district court finding that a 100% violation rate was justified because the plaintiff there asserted in her complaint that "at all relevant times herein, defendants intentionally and willfully failed to furnish plaintiff and the class members with accurate wage statements," thereby accusing defendants of "issuing inaccurate wage statements 'at all times' and in regards to both Plaintiff and the class members."); *Lucas*, 2018 U.S. Dist. LEXIS 78510, at *25 (noting that "it is not unreasonable to assume that, with this many violations alleged

by Plaintiff, every one of the wage statements issued during the one-year period could very likely have been noncompliant").

30. Thus, for the reasons discussed above, and without conceding or admitting to the underlying merit of Plaintiffs' claims, it is plausible that the aggregate amount in controversy in connection with Plaintiffs' putative class claims is **$15,083,513.42**[7] which surpasses the $5,000,000 jurisdictional threshold required under CAFA.

| Cause of Action | Amount-In-Controversy |
|---|---|
| First Cause of Action: Unpaid Overtime | $1,985,012.21 |
| Second Cause of Action: Unpaid Meal Period Premiums | $1,323,341.47 |
| Third Cause of Action: Unpaid Rest Period Premiums | $1,323,341.47 |
| Fourth Cause of Action: Unpaid Minimum Wages | $1,323,341.47 |
| Fifth Cause of Action: Final Wages Not Timely Paid | $4,341,376.80 |
| Seventh Cause of Action: Non-Compliant Wage Statements | $4,787,100.00 |
| **Minimum Amount-In-Controversy:** | **$15,083,513.42** |

## NOTICE TO ALL PARTIES AND STATE COURT

---

[7] This amount does not include potential damages for Plaintiffs' sixth cause of action for failure to timely pay wages due during employment pursuant to California Labor Code sections 204 and 210, Plaintiff's ninth cause of action for unreimbursed business expenses pursuant to California Labor Code section 2802, nor attorneys' fees which Plaintiffs seek, which would further increase the amount in controversy in connection with Plaintiffs' putative class claims.

Case 2:22-cv-06930-AH-MAR   Document 1   Filed 09/26/22   Page 17 of 17   Page ID #:17

31. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers promptly will be served on Plaintiffs' counsel and filed with the Clerk of the Los Angeles Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 have been satisfied.

## CONCLUSION

32. Based on the foregoing, Defendant hereby removes the above-captioned action from the Los Angeles Superior Court to this Court based on CAFA requirements (28 U.S.C. §§ 1332(d), 1441, 1446 and 1453), and respectfully requests that this Court retain jurisdiction for all further proceedings.

Dated  September 26, 2022

**JACKSON LEWIS P.C.**

By _____
Adam Y. Siegel
Kishaniah Dhamodaran

Attorneys for Defendant
PARSEC, INC. D/B/A OHIO PARSEC, INC.

17
NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT