UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:22-cv-06930-AH-(MARx) | Date | November 13, 2025 |
| Title | Tyrone Johnson et al. v. Parsec, Inc. | | |

Present: The Honorable    Anne Hwang, United States District Judge

| Yolanda Skipper | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    (IN CHAMBERS) ORDER GRANTING IN PART MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CLASS REPRESENTATIVE SERVICE PAYMENTS, CLASS COUNSEL FEES PAYMENT, AND CLASS COUNSEL LITIGATION EXPENSES PAYMENT (DKT. NO. 66)**

Before the Court is Plaintiffs Tyrone Johnson, Terrence Kennedy, and James Walker's (collectively, "Plaintiffs") unopposed Motion for Final Approval of Class Action Settlement, Class Representative Service Payments, Class Counsel Fees Payment, and Class Counsel Litigation Expenses Payment ("Motion"). Dkt. No. 66. The Court held a final fairness hearing on November 12, 2025. For the following reasons, the Court GRANTS IN PART Plaintiffs' Motion.

## I.    BACKGROUND

### A.    Factual and Procedural Background

Plaintiffs are former employees of Defendant Parsec, Inc. ("Defendant"). Plaintiffs allege that Defendant violated various provisions of the California Labor Code. *See generally* First Amended Complaint ("FAC"), Dkt. No. 52.

In August 2022, Johnson and Kennedy filed an enforcement action under the Private Attorneys General Act ("PAGA") and a putative wage-and-hour class action complaint in the Los Angeles County Superior Court. Mot. at 2; *see* Notice of Removal ("NOR"), Dkt. No. 1. Plaintiffs alleged the following causes of action: (1) unpaid overtime in violation of California Labor Code §§ 510 and 1198; (2) unpaid meal period premiums in violation of California Labor Code §§ 226.7 and 512(a); (3) unpaid rest period premiums in violation of California Labor Code § 226.7; (4) unpaid minimum wages in violation of California Labor Code §§ 1194, 1197, and 1197.1; (5) failure to timely pay final wages in violation of California Labor Code §§ 201 and 202; (6) failure to timely pay wages during employment in violation of California Labor Code § 204; (7) failure to furnish accurate wage statement in violation of California Labor Code § 226(a); (8) failure to keep requisite payroll records in violation of California Labor Code § 1174(d); (9) failure to reimburse business expenses in violation of California Labor Code §§ 2800 and 2802; and (10) unfair competition in violation of California Business & Professions Code § 17200 *et seq*. Compl. ¶¶ 55–125, Dkt. 1-2. Defendant removed the class action case to this Court under the Class Action Fairness Act of 2005 ("CAFA"). NOR ¶ 9. On November 15, 2024, Plaintiffs filed the FAC, which consolidated the PAGA action and the class action and added Walker as a named plaintiff. *See generally* FAC.

On December 16, 2024, Plaintiffs moved for preliminary approval of the proposed class action settlement and PAGA settlement, Dkt. No. 54, which the Court denied on February 5, 2025. *See* Order Den. Prelim. Approval, Dkt. No. 60. The Court certified the proposed class for settlement purposes but preliminarily denied the class action settlement. *Id*. at 11, 20. On April 7, 2025, Plaintiffs filed a renewed motion for preliminary approval, Dkt. No. 61, along with a proposed amendment, Parker-Fawley Suppl. Decl., Ex. 1, Dkt. No. 63-1, which the Court granted on June 6, 2025. *See* Order Granting Prelim. Approval, Dkt. No. 64. The Court preliminarily granted certification of the proposed class for settlement purposes only, preliminarily approved the proposed settlement agreement, appointed Plaintiffs as class representatives and Lawyers for Justice, PC ("Class Counsel") as class counsel, and preliminarily approved the sum allocated for payment of penalties under PAGA. *Id.* at 2.

On July 25, 2025, Phoenix Settlement Administrators ("Administrator") mailed the class notice to 2,837 individuals identified as class members. Mot. at 4; Phoenix Decl. ¶ 5. On August 11, 2025, the Administrator mailed CAFA Notices on behalf of Defendant to the eleven states in which settlement class members

resided based on the class list. Phoenix Decl. ¶ 6. The Administrator has not received any objections or requests for exclusion from class members. Mot. at 4; Phoenix Decl. ¶ 9–10. The deadline to request exclusion from or object to the class settlement was September 8, 2025. *Id.* Plaintiffs accordingly represent that there are 2,837 participating class members who did not submit a timely and valid request for exclusion ("Class Members"). Mot. at 5; Phoenix Decl. ¶ 12.

On October 15, 2025, Plaintiffs moved for final approval of the Class Action and PAGA Settlement Agreement ("Settlement Agreement"), Parker-Fawley Decl., Ex. 1, Dkt. No. 61-1. *See* Mot. at 1.

## B.    Settlement Agreement

The Class Members are defined as "current and former non-exempt or hourly-paid employees employed by Defendant in the State of California who worked for Defendant at any time during the Class Period," from August 8, 2018, to September 27, 2023. Settlement Agreement ¶¶ 1.5, 1.12. The Aggrieved Employees are defined as "non-exempt or hourly-paid employees employed by Defendant in the State of California who worked for Defendant at any time during the PAGA Period," from June 1, 2021, to September 27, 2023. *Id.* ¶¶ 1.4, 5.1.

Under the Settlement Agreement, Defendants have agreed to pay a gross settlement amount of $4,476,098. Mot. at 3; Settlement Agreement ¶ 3.1. The net settlement amount of approximately $2,306,463.70, to be distributed to participating Class Members, is calculated by deducting the following amounts from the gross settlement amount: (1) PAGA Penalties in the amount of $500,000; (2) Class Counsel Fees Payment in an amount of $1,566,634.30 (i.e., up to 35 percent of the Gross Settlement Amount) and Class Counsel Litigation Expenses of $39,063.57; (3) Administrator Expenses Payment of $18,000 to the Administrator; and (4) Class Representative Service Payments in the amounts of $15,000 to Johnson, $12,500 to Kennedy, and $7,500 to Walker. Mot. at 3; Settlement Agreement ¶ 3.2.

Under the Settlement Agreement, each of the 2,837 Participating Class Members will be paid a pro rata share of the Net Settlement Amount, based on the number of Workweeks credited to him or her. Mot. at 10; Settlement Agreement ¶ 3.2.4. The highest individual settlement share is estimated to be $2,077.11 and the average individual settlement payment is estimated to be $812.99. Mot. at 5; Phoenix Decl. ¶ 15. The PAGA penalties will be paid 75 percent ($375,000) to the

California Labor & Workforce Development Agency ("LWDA") and 25 percent ($125,000) to the 1,919 Aggrieved Employees. Mot. at 3–4; Settlement Agreement ¶ 3.2.5; Phoenix Decl. ¶ 16. The highest individual PAGA payment is estimated to be $106.57 and the average individual PAGA payment is estimated to be $65.14. Phoenix Decl. ¶ 16.

Funds represented by individual settlement payment checks returned as undeliverable or remaining un-cashed for more than 180 calendar days after issuance will be cancelled and tendered to the California State Controller as unclaimed property in the name of the Class Member. Mot. at 4; Settlement Agreement ¶ 4.4.3.

## II.    CLASS CERTIFICATION

In its Order Denying Preliminary Approval, the Court certified the proposed class for settlement purposes under Rule 23(b)(3). *See* Order Den. Prelim. Approval at 11. The certified settlement class is defined as: "All current and former non-exempt or hourly-paid employees employed by Defendant in the State of California who worked for Defendant at any time during the Class Period" from August 8, 2018, through September 27, 2023. *Id.* at 3. Neither party has provided reason to depart from Court's previous finding of a proper settlement class. The Court therefore incorporates its class certification analysis from the Order Denying Preliminary Approval into this Order. *See id.* at 6–11.

## III.   CLASS ACTION SETTLEMENT

Rule 23(e) authorizes district courts to approve class action settlements when they are "fair, reasonable, and adequate." See Fed. R. Civ. P. 23(e)(2). To determine the fairness, adequacy, and reasonableness of the agreement, Rule 23(e) requires courts to consider four factors: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to each other. *Id.*

In the Ninth Circuit, district courts consider an additional eight factors from *Churchill Vill. L.L.C. v. Gen Elec.*, 361 F.3d 566 (9th Cir. 2004) ("*Churchill* factors"), many of which overlap with Rule 23(e)'s factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the

amount offered in settlement; (5) the extent of discovery completed and the stage
of the proceedings; (6) the experience and views of counsel; (7) the presence of a
governmental participant; and (8) the reaction of the class members of the
proposed settlement. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946
(9th Cir. 2011).

In addition to these factors, the Court must also confirm that the "settlement
is not the product of collusion among the negotiating parties." *Id.* at 946–47. The
Ninth Circuit has identified three signs of potential collusion: (1) "when counsel
receive a disproportionate distribution of the settlement"; (2) "when the parties
negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees
separate and apart from class funds"; and (3) "when the parties arrange for fees not
awarded to revert to defendants rather than be added to the class fund." *Id.* at 947
(cleaned up).

Where, as here, the parties reach a class action settlement prior to class
certification, district courts apply "a higher standard of fairness and a more probing
inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*,
697 F.3d 858, 864 (9th Cir. 2012) (quotations omitted). Such settlement
agreements "must withstand an even higher level of scrutiny for evidence of
collusion or other conflicts of interest than is ordinarily required under Rule 23(e)
before securing the court's approval as fair." *In re Bluetooth*, 654 F.3d at 946. A
more "exacting review is warranted to ensure that class representatives and their
counsel do not secure a disproportionate benefit at the expense of the unnamed
plaintiffs who class counsel had a duty to represent." *Id.* (quotations omitted).

## A.    Rule 23(e) Factors

First, the Court considers the fairness, reasonableness, and adequacy of the
Settlement Agreement. In its Order Denying Preliminary Approval, the Court
analyzed the Settlement Agreement under the Rule 23(e) factors and concluded it
was unlikely to find the proposed settlement fair, reasonable, and adequate at a
final fairness hearing. Order Den. Prelim. Approval at 20. The Court now revisits
these factors for final approval.

### i.    *Adequate Representation*

The first factor under Rule 23(e) is whether the class representative and class
counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). The
Court previously found that because the proposed class satisfies Rule 23(a)(4) for

purposes of class certification, the adequacy factor under Rule 23(e)(2)(A) is also met. *See* Order Den. Prelim. Approval at 15. This analysis still applies, and the Court finds this factor weighs in favor of final approval.

> ## ii. *Arm's Length Negotiation*

The second factor under Rule 23(e) is whether the settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). The Court previously declined to find that the settlement was made at arms' length, citing its findings of subtle signs of collusion present in the Settlement Agreement. *See* Order Den. Prelim. Approval at 16. At the final approval stage, however, the Court no longer finds collusion. *See infra* section III.C. Plaintiffs represent that the parties agreed to settle with "the aid of the mediator's evaluation" following a "formal, full-day mediation conducted by Mark Rudy, Esq., a well-respected mediator experienced in mediating complex wage-and-hour matters." Mot. at 7–8; Parker-Fawley Decl. ¶ 25, Dkt. No. 66-1. As the "presence and assistance of an experienced mediator in the settlement process strongly suggests that the settlement is non-collusive," it appears the settlement was negotiated at arm's length. *See Cuellar v. First Transit Inc.*, 2024 WL 83231, at *5 (C.D. Cal. Jan. 8, 2024) (internal quotation marks and citation omitted). This factor therefore no longer weighs against approval.

> ## iii. *Adequacy of Relief*

Rule 23(e)(2)(c) provides four additional factors for evaluating the adequacy of relief: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C). The Court previously concluded that three of these four factors weighed against approval. *See* Order Den. Prelim. Approval at 16–18. The Court reconsiders these factors for final approval.

In assessing "the costs, risks, and delay of trial and appeal," courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial." *Baron v. HyreCar Inc.*, 2024 WL 3504234, at *7 (C.D. Cal. July 19, 2024) (citation omitted). The Court previously found that the motion for preliminary approval made only superficial arguments regarding the strength of Plaintiffs' case and lacked sufficient detail for the Court

to make a reasoned determination. Order Den. Prelim. Approval at 16. Plaintiffs'
instant Motion still offers more generalized conclusions than specific facts. For
instance, Plaintiffs do not provide the estimated total potential recovery, despite
numerous courts in the Ninth Circuit requiring parties to do so and the Court's
prior reminder. *See* Order Den. Prelim. Approval at 16; *see also Grady v. RCM
Techs., Inc.*, 671 F. Supp. 3d 1065, 1075 (C.D. Cal. 2023) ("To determine whether
the amount offered in settlement is fair, district courts in the Ninth Circuit must
compare the settlement amount to what the parties estimate would be the
maximum recovery in a successful litigation."). The Court therefore refers to
Defendant's representation that "a plausible reading of the Complaint
conservatively places an aggregate amount in controversy exceeding
**$15,083,513.42** exclusive of attorneys' fees, interests, and costs." NOR ¶ 29
(emphasis in original). Taking this at face value, the gross settlement amount
represents at most about 29.7 percent of the potential recovery. "The test of a
settlement is not the maximum amount that the plaintiffs might have recovered,
but, rather, whether the settlement is within a reasonable range." *Cuellar*, 2024
WL 83231, at *5 (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965–66 (9th
Cir. 2009)). The Court finds that a gross settlement amount of up to 29.7 percent is
in line with those found to be reasonable by courts in this district. *See, e.g.*,
*Dawson v. Hitco Carbon Composites, Inc.*, 2019 WL 7842550, at *4, *6 (C.D. Cal.
Nov. 25, 2019) (finding a settlement amount of approximately 22 percent of the
estimated potential recovery to be reasonable).

Next, the Court assesses the distribution method to ensure it "permits the
equitable distribution of limited settlement proceeds to eligible class members."
*McHorney v. GameStop Corp.*, 2010 WL 11549399, at *4 (C.D. Cal. June 17,
2010). The Court previously raised concerns about whether the proposed
distribution formula based on workweeks might undercompensate some
employees and overcompensate others. *See* Order Den. Prelim. Approval at 18;
*see also Grady*, 671 F. Supp. 3d at 1083 (noting that a similar distribution method
based on workweeks was "'equal'—but not 'equitable'"). In response, Plaintiffs
argue that the "pro rata allocation here is a fair and reasonable way to distribute the
Net Settlement Amount given that Class Members largely worked regular, full-time
workweeks." Mot. at 10. Considering this fact, along with other courts' approval
of settlements with similar workweek-based distribution methods, the Court finds
this distribution method to be adequate. *See, e.g., Sarabia v. Ricoh USA, Inc.*, 2023
WL 3432160, at *1 (C.D. Cal. May 1, 2023) (granting final approval of a
settlement with a similar pro rata, workweek-based distribution method).

Next, the Court must scrutinize the proposed attorney's fees for signs of
collusion.  The Court discusses signs of collusion and the reasonableness of the
proposed attorney's fees at length below and concludes the proposed attorney's
fees are excessive.  *See supra* sections III.C.i, V.A.  The Court denies Class
Counsel's request for 35 percent of the gross settlement amount and instead awards
the presumptively reasonable benchmark of 25 percent.  *See supra* section V.A.3.
The Court also finds this adjusted award of attorney's fees to be fair and reasonable
in the context of adequacy of relief.

Finally, the Court must evaluate any agreement required to be identified
under Rule 23(e)(3).  The parties assert that there are no separate agreements
between Plaintiffs' Counsel and Defendant's Counsel or between Plaintiffs'
Counsel and Defendant.  Parker-Fawley Suppl. Decl. ¶ 7.  This therefore does not
factor into the analysis.

In sum, considering the Rule 23(e)(2)(c) factors, the Court finds that the
adequacy of relief factor no longer weighs against final approval.

### iv.    Equitable Treatment of Class Members

The final factor under Rule 23(e) is whether the settlement "treats class
members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  "Matters of
concern could include whether the apportionment of relief among class members
takes appropriate account of differences among their claims, and whether the scope
of the release may affect class members in different ways that bear on the
apportionment of relief."  Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Comm.
Notes.  As discussed above, the Court finds treatment of the class members to be
equitable because recovery by each Class Member depends on the duration of their
employment during the class period, allocated on a workweek basis.  Settlement
Agreement ¶ 3.2.4; *see Cuellar*, 2024 WL 83231, at *7 (finding a similar recovery
model to be equitable).

The Court, however, previously raised the issue of the proposed service
awards of $15,000 to Johnson, $12,500 to Kennedy, and $7,500 Walker, noting that
these represented sixteen, thirteen, and eight times more than the average
participating Class Member's recovery.  *See* Order Den. Prelim. Approval at 19.
The Court found that the proposed service awards provided the named Plaintiffs
with preferential treatment and raised a substantial risk that they would not fairly
represent the class, which weighed against approval.  *Id.* at 20.  At the final

approval stage, the Court addresses the proposed service awards in detail and concludes that they are excessive.  *See infra* section V.C.  The Court instead awards $10,000 to Johnson, $7,500 to Kennedy, and $5,000 to Walker.  *See id.*  In light of the Court's adjusted service awards, this factor no longer weighs against approval.

## B.  Ninth Circuit *Churchill* Factors

Next, the Court turns to the eight *Churchill* factors used in the Ninth Circuit to evaluate a settlement's fairness.  The Court notes that many of the *Churchill* factors overlap with the Rule 23(e) factors analyzed above, as well as the factors relevant to assessing attorney's fees below.  *See supra* section III.A; *infra* sections V.A.1.i–iii.

### i.    Strength of Plaintiffs' Case

"An important consideration in judging the reasonableness of a settlement is the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement."  *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (C.D. Cal. 2010) (internal quotation marks omitted).  This factor is generally satisfied when plaintiffs "must overcome barriers to make their case."  *See Dawson*, 2019 WL 7842550, at *3.  Plaintiffs points out that Defendant raised defenses and denied liability, requiring Plaintiffs to conduct significant formal and informal discovery.  Mot. at 20–21.  Class Counsel also "developed liability, damages, and penalties valuation models in the course of litigation and in connection with mediation and settlement negotiation."  *Id.* at 7.  Accordingly, the Court finds that this factor weighs in favor of approval.

### ii.    Risk, Expense, Complexity, and Likely Duration of Further Litigation

This factor contemplates the risk of further litigation if the parties do not achieve settlement.  The parties have litigated this case for more than three years.  Parker-Fawley Decl. ¶ 25.  Plaintiffs assert that if this matter settles after further litigation, "the settlement amount would have taken into account the additional costs incurred, and there would have been less money available for Class Members after all was said and done."  Mot. at 9.  Agreeing that settlement would provide sooner and guaranteed recovery to Class Members, as opposed to the risks and delays of continued litigation, the Court finds this factor weighs in favor of approval.

### iii.    Risk of Maintaining Class Action Status Throughout Trial

The Court has preliminarily certified the class for settlement purposes only. *See* Order Den. Prelim. Approval; Order Granting Prelim. Approval.  Plaintiffs claim that absent settlement, "Defendant would have vigorously challenged class certification and liability."  Mot. at 8.  But given that the Court has twice confirmed class certification after an analysis under Rules 23(a) and 23(b), this factor does not weigh strongly in favor of approval but also does not weigh against approval. *See also infra* section V.A.1.ii (discussing risks of continued litigation in the context of attorney's fees).

### iv.    Amount Offered in Settlement

The Court evaluated the amount offered in settlement when considering adequacy of relief.  *See supra* section III.A.iii.  The Court considered the Gross Settlement Amount to be reasonable, which weighs in favor of approval.

### v.    Extent of Discovery Completed and Stage of Proceedings

This factor evaluates whether Plaintiffs "had sufficient information to make an informed decision about the merits of their case."  *Dawson*, 2019 WL 7842550, at *4 (citing *In re Mego*, 213 F.3d 454, 459 (9th Cir. 2000)).  "The more discovery that has been completed, the more likely it is that the parties have a clear view of the strengths and weaknesses of their cases."  *Id.* (internal quotation marks and citation omitted).  Here, Plaintiffs assert that Class Counsel "reviewed thousands of pages of data and documents produced as a result of this discovery, including, but not limited to: Plaintiffs' and other Class Members' employment records; a detailed sampling of Class Members' time and pay data; [and] Defendant's Employee Handbooks, agreements, internal memoranda, job titles and descriptions, operations and employment practices, forms, procedures, and policies."  Mot. at 6–7.  Plaintiffs also describe depositions of two witnesses and a full-day deposition of Johnson.  *Id.* at 7.  Additionally, the parties have participated in a full-day mediation and engaged in "extensive settlement negotiations."  *Id.*  Considering these facts, the Court finds that Plaintiffs had sufficient information to "make an informed decision about the settlement based on the strengths and weaknesses of their case," though Plaintiffs do not elaborate on these particular strengths and weaknesses in the Motion.  *See Dawson*, 2019 WL 7842550, at *5.  This factor therefore weighs in favor of approval.

### vi.    *Experience and View of Counsel*

"Parties represented by competent counsel are better positioned than courts
to produce a settlement that fairly reflects each party's expected outcome in
litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Here,
Class Counsel purportedly have extensive experience handling employment class
action cases.  Parker-Fawley Decl. ¶ 18.  The Court recognizes their experience
allows them to evaluate the merits of the claims and the risks associated with
prosecuting them.  The Court accordingly credits Class Counsel's determination
and finds that this factor weighs in favor of approval.

### vii.    *Presence of a Government Participant*

Because there is no government entity directly participating in the case, this
factor is not relevant to the analysis.

### viii.    *Reaction of the Class Members to the Proposed Settlement*

"It is established that the absence of a large number of objections to a
proposed class action settlement raises a strong presumption that the terms of a
proposed class action settlement are favorable to the class members."  *Molski v.
Gleich*, 318 F.3d 937, 953 (9th Cir. 2003).  Here, none of the Class Members who
received the class notice objected or requested to be excluded.  Phoenix Decl. ¶ 9–
10.  This factor therefore weighs in favor of approval.

### C.    **Collusion Factors**

Finally, the Court considers whether the Settlement Agreement presents
"subtle warning signs" that it may be a collusive byproduct, namely whether there
is (1) a disproportionate award of settlement funds to class counsel; (2) a "clear
sailing" arrangement, where the defendant agrees not to challenge a request for an
agreed-upon attorney's fee; or (3) a "reversion" or "kicker" provision that returns
unawarded fees to the defendant, rather than the class.  *See In re Bluetooth*, 654
F.3d at 947; *see also Briseño v. Henderson*, 998 F.3d 1014, 1022–25 (9th Cir.
2021) (holding that "courts must apply *Bluetooth*'s heightened scrutiny" to both
pre-and post-class certification settlements).  "The presence of these three signs is
not a death knell," but they "require the district court to examine them, develop the
record to support its final approval decision, and thereby assure itself that the fees
awarded in the agreement were not unreasonably high."  *Kim v. Allison*, 8 F.4th
1170, 1180 (9th Cir. 2021).

---

In its Order Denying Preliminary Approval, the Court analyzed the three collusion factors, finding that (1) Class Counsel's request of attorney's fees in the amount of 35 percent of the Gross Settlement Amount may weigh against approval; (2) the Proposed Settlement Agreement's "clear-sailing" provision weighed against approval; and (3) the Gross Settlement Amount was non-reversionary and therefore did not weight against approval.  Order Den. Prelim. Approval at 13–15.  The Court concluded that because at least one, and possibly two, signs of potential collusion were present in the proposed Settlement Agreement, these factors weighed against preliminary approval.  *Id.* at 15.  The Court now reviews this finding for final approval.

> i.  *Award to Class Counsel*

The Settlement Agreement awards attorneys' fees of 35 percent of the gross settlement amount, in the amount of $1,566,634.30.  Mot. at 14; Settlement Agreement ¶ 3.2.2.  As the Court previously noted, some district courts have found that a fee award of 35 percent is a "red flag" even though it may not necessarily implicate collusion by itself.  *Sanchez v. Mohawk Indus., Inc.*, 2024 WL 4556094, at *16 (E.D. Cal. Oct. 23, 2024) (holding that an award up to 35 percent did not mandate a finding of collusion, though it did require the class counsel to explain the reasoning for an amount outside the typical range in the Ninth Circuit); *Koeppen v. Carvana, LLC*, 2024 WL 3925703, at *9 (N.D. Cal. Aug. 22, 2024) ("[W]hile [35 percent] is a red flag, it does not raise a concern regarding collusion.").  The Court further discusses the request for 35 percent below.  *See infra* section V.A.  The Court finds that while the request is excessive and may possibly suggest collusion, it does not alone support a finding of collusion.

> ii.  *Clear-Sailing Provision*

After the Court raised concerns regarding the "clear sailing" provision in the proposed Settlement Agreement, Plaintiffs explained that the provision was included based on the parties' use of the Los Angeles Superior Court [Model] Class Action Settlement Agreement, which includes that provision.  Parker-Fawley Suppl. Decl. ¶ 3.  Under Amendment No. 1 to the Settlement Agreement, the parties agreed to amend the terms of the Proposed Settlement Agreement to delete the "clear sailing" provisions.  *Id*. Ex. 1, Dkt. No. 63-1 (striking "Defendant will not oppose Plaintiffs' request for Class Representative Service Payments that does not exceed this amount." from Paragraph 3.2.1 and striking "Defendant will not oppose requests for these payments [to Class Counsel] provided that they do not

exceed these amounts." from Paragraph 3.2.2.).  Considering these developments, the Court finds this factor no longer suggests collusion.

### iii.    Reversion or Kicker

The gross settlement amount remains non-reversionary.  Settlement Agreement ¶ 3.3.1 ("None of the Gross Settlement Amount will revert to Defendant.").  Instead, funds represented by undelivered or uncashed checks will be cancelled and tendered to the California State Controller as unclaimed property in the name of the Class Member.  Mot. at 4; Settlement Agreement ¶ 4.4.3.  This factor does not suggest collusion.

### D.    Conclusion on Class Action Settlement

On final approval, the Court finds that the four Rule 23(e) factors no longer weigh against approval.  Additionally, the eight *Churchill* factors weigh in favor of approval or are neutral.  Finally, only one of the three collusion factors possibly suggests collusion, which does not overall support a finding of collusion.  Balancing these factors, the Court GRANTS Plaintiffs' motion for final approval of the Settlement Agreement, as amended by Amendment No. 1, and the Gross Settlement Amount of $4,476,098.

The Court notes that the net settlement amount and individual payments to Class Members will be increased because the Court does not award the full amount of attorney's fees and service awards requested.  *See supra* sections V.A, V.B.  Per the Court's calculation, the new net settlement amount will be approximately $2,777,509.93.[1]

## IV.    PAGA SETTLEMENT

Plaintiffs also seek final approval of the $500,000 PAGA settlement, of which 75 percent ($375,000) will be paid to LWDA and 25 percent ($125,000) will be distributed to the 1,919 Aggrieved Employees.  Settlement Agreement ¶ 3.2.5; Phoenix Decl. ¶ 16.

---

[1] The Court reached this figure by subtracting the following amounts from the gross settlement amount of $4,476,098: (1) $500,000 in PAGA payment; (2) $1,119,024.50 in attorney's fees; (3) $39,063.57 in litigation costs; (4) $22,500 total in service awards; and (5) $18,000 in administration costs.

Courts must evaluate "the adequacy of [a PAGA] settlement in view of the purposes and policies of PAGA." *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016). PAGA's primary purpose is to "permit aggrieved employees to act as private attorneys general to collect civil penalties for violations of the Labor Code." *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 430 (9th Cir. 2015). Because a plaintiff bringing a PAGA claim "does so as the proxy or agent of the state's labor law enforcement agencies," a judgment "binds all those who would be bound by an action brought by the government, *including* nonparty employees." *O'Connor*, 201 F. Supp. 3d at 1133 (emphasis in original) (quoting *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009)). PAGA plaintiffs therefore "take on a special responsibility to their fellow aggrieved workers who are effectively bound by any judgment," especially given that PAGA does not require class action procedures such as notice and opt-out rights. *Id.* at 1134.

The California Labor Code sets forth the formula to calculate civil PAGA penalties: $100 is assessed for each aggrieved employee per pay period for the initial violation and $200 is assessed for each aggrieved employee per pay period for each subsequent violation. Cal. Lab. Code § 2699(f). There are 1,919 Aggrieved Employees who worked a total of 143,105 pay periods during the PAGA Period. Phoenix Decl. ¶ 16. There is no evidence before the Court to determine over how many pay periods the violations spanned or whether the violations were classified as initial only or initial and subsequent. The statutory penalty for 1,919 Aggrieved Employees could therefore range anywhere from $191,900 to more than $14,310,500.

Without further information to determine the exact statutory penalty, the Court may consider whether the proposed PAGA settlement is reasonable and fair. *See Echavez v. Abercrombie & Fitch Co.*, 2017 WL 3669607, at *3 (C.D. Cal. Mar. 23, 2017) ("Although the proposed PAGA penalty is less than the statutory maximum penalty, the Court finds it reasonable and fair."); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) ("[T]he question whether a settlement is fundamentally fair . . . is different from the question whether the settlement is perfect in the estimation of the reviewing court."). The PAGA settlement of $500,000 is above the minimum possible statutory penalty of $191,900 and is divided in accordance with PAGA's distribution formula. Further, the Court has not received any objection from LWDA, which weighs in favor of

granting approval.[2]  *See Echavez*, 2017 WL 3669607, at *3 ("The Court infers
LWDA's non-response is tantamount to its consent to the proposed settlement
terms, namely the proposed PAGA penalty amount.").  Accordingly, the Court
concludes the PAGA portion of the settlement — about eleven percent of the Gross
Settlement Amount — is reasonable in view of PAGA's purpose of collecting civil
penalties for Labor Code violations.  *See Grady v. RCM Techs., Inc.*, 2025 BL
112778, at *7 (C.D. Cal. Apr. 01, 2025) (granting final approval of a PAGA
payment that represented ten percent of the gross settlement amount).

The Court GRANTS final approval of the $500,000 PAGA payment.

## V.    ATTORNEY'S FEES AND COSTS, SERVICE AWARDS, AND ADMINISTRATION COSTS

### A.    Attorney's Fees

Class Counsel seeks the approval of attorneys' fees in the amount of
$1,566,634.30, which is 35 percent of the gross settlement amount.  Mot. at 15.

This case was removed to this Court under CAFA, which "confers federal
diversity jurisdictions over class actions" that meet certain requirements.  *See
Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 571 (2005).
California law therefore governs Plaintiffs' motion for attorneys' fees.  *See Klein v.
City of Laguna Beach*, 810 F.3d 693, 701 (9th Cir. 2016) ("[F]ederal courts apply
state law for attorneys' fees to state claims because of the *Erie* doctrine.") (internal
footnote omitted); *Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470,
1478 (9th Cir. 1995) ("Existing Ninth Circuit precedent has applied state law in
determining not only the right to fees, but also in the method of calculating fees.").

---

[2] In its Order Denying Preliminary Approval, the Court noted that Plaintiffs had not
demonstrated compliance with the statutory requirement that the proposed
settlement be submitted to LWDA for comment.  Order Den. Prelim. Approval at
20–21; *see* Cal. Lab. Code § 2699(s)(2) ("The proposed settlement shall be
submitted to the agency at the same time that it is submitted to the court.").  In this
Motion, Plaintiffs represent that they submitted the proposed Settlement
Agreement to the LWDA for comment on June 21, 2024.  Mot. at 3.  Plaintiffs
have not addressed whether LWDA has submitted any objection to the proposed
PAGA settlement, which the Court interprets to mean that no objection was
submitted.

Under California law, class action litigation can result in an attorney's fee award through the common fund when "a class settlement agreement establishes a relief fund from which the attorney fee is to be drawn." *Laffitte v. Robert Half Int'l, Inc.*, 1 Cal. 5th 480, 488–89 (2016). Under both California law and Ninth Circuit caselaw, courts may apply two methods of assigning attorney's fees in common fund cases: the percentage-of-the-fund method and the lodestar method. *Laffitte*, 1 Cal. 5th at 503; *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Courts commonly apply the percentage method to evaluate attorney's fees request and then use the lodestar method to cross-check the percentage fee. *See Vizcaino*, 290 F.3d at 1047, 1050.

### 1.    Percentage of the Fund

Under the percentage method, courts may award class counsel a percentage of the common fund recovered for the class. *Laffitte*, 1 Cal. 5th at 489; *Vizcaino*, 290 F.3d at 1047. In the Ninth Circuit, the benchmark for a reasonable fee award in common-fund cases is 25 percent of the recovery obtained. *Vizcaino*, 290 F.3d at 1047; *see also Laffitte*, 1 Cal. 5th at 495 (discussing the Ninth Circuit's 25 percent benchmark). Courts should adjust the benchmark percentage if the record shows that "special circumstances" justify upwards or downwards departure. *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). In deciding whether a departure from the 25 percent benchmark is reasonable, a district court may consider "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing *Vizcaino*, 290 F.3d at 1048–50).

Class Counsel argues the requested fee of 35 percent of the gross settlement amount, equaling $1,566,634.30, is reasonable given the risk assumed by taking the case on a contingency basis; efforts expended in litigating the case since it commenced in August 2022, totaling 420.5 hours of work; the "significant monetary relief" obtained; and the skills and experience of Class Counsel. Mot. at 16–19. The Court acknowledges Class Counsel's general diligence during discovery and negotiation with no guarantee of recovery, as well as the outcome of the gross settlement, but finds that Class Counsel have not demonstrated how these factors indicate that the 35 percent recovery is warranted here, considering these

factors are typically present in other common fund cases.[3]  *See Six (6) Mexican
Workers*, 904 F.2d at 1311 (finding that nothing in a case that lasted more than 13
years, obtained substantial success, and involved complicated legal and factual
issues required departure from the 25 percent standard award).

    *i.   Results Achieved*

    "The overall result and benefit to the class from the litigation is the most
critical factor in granting a fee award."  *In re OmniVision*, 559 F. Supp. 2d at 1046.
Class Counsel asserts that the gross settlement amount of $4,476,098 offers
"significant monetary relief" to Class Members.  Mot. at 19.  The settlement will
yield an average individual settlement payment of about $812.99.  Mot. 5; Phoenix
Decl. ¶ 15.  Courts in this district have found that a similar average individual
recovery of $823.53 possibly falls in the range of awards warranting a rate higher
than 25 percent.  *See Hang v. Old Dominion Freight Line, Inc.*, 2024 WL 2191930,
at *10 (C.D. Cal. May 14, 2024) (comparing *Howard Fan v. Delta Air Lines, Inc.*,
2020 WL 5044614, at *3 (C.D. Cal. May 20, 2020) (finding that an expected
recovery of $636.52 per class member was not "so exceptional as to support an
upward adjustment to the fee award" above the 25 percent benchmark) with *Pagh
v. Wyndham Vacation Ownership, Inc.*, 2021 WL 3017517, at *2 (C.D. Cal. Mar.
23, 2021) (finding an average award of $1,029.73 per class member to be
"excellent")).

    However, where there is "no strong evidence that 'counsel pursued this case
in the absence of supporting precedents' or 'in the face of agreements signed by the
class members forsaking benefits,'" courts in this district have found this factor
does not justify a departure from the 25 percent benchmark.  *Id*. (quoting *Vizcaino*,
290 F.3d at 1048) (noting that "wage and hour laws are not novel, and class action
lawsuits arising under them are not new").  Nothing in this case was of an
unprecedented nature that would suggest "exceptional results" or "special

---

[3] In its Order Denying Preliminary Approval, the Court expressed reservation
regarding Class Counsel's request for a percentage award of 35 percent and
counseled Class Counsel to "thoroughly brief the appropriateness of awarding
more than the 25% benchmark, which Class Counsel has not done sufficiently in
the [motion for preliminary approval]."  Order Den. Prelim. Approval at 14.  Class
Counsel's briefing on attorney's fees in this Motion provides more detail than that
in its prior motion for preliminary approval but still does not sufficiently explain
why any of the factors discussed constitute "special circumstances."

circumstances." *Cf. Vandervort v. Balboa Cap. Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (finding an "exceptional result" where class counsel achieved certification of the first federal class of its kind); *Ontiveros v. Zamora*, 303 F.R.D. 356, 373 (E.D. Cal. 2014) (noting that class counsel's novel and untested theory of liability may constitute a "special circumstance"). On balance, the Court therefore finds that Class Counsel "achieved a strong result for the class, but not necessarily an exceptional one."[4] *See Hang*, 2024 WL 2191930, at *10. The factor therefore does not support a departure from the benchmark.

  ii. *Risk of Litigation*

   "The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *OmniVision*, 559 F. Supp. 2d at 1046–47. The Court considers how further litigation could jeopardize chances of recovery, as well as the complexity of the legal issues involved. *See Vizcaino*, 290 F.3d at 1048. Class Counsel describes the risks of further litigation in this case as including "a determination that the claims were unsuitable for class treatment and/or representative adjudication, class de-certification after certification of a class, allowing a jury to decide the claims, trial, and/or appeals." Mot. at 17. Given that the Court has twice confirmed class certification, the former two listed risks are not likely to jeopardize recovery. *See* Order Den. Prelim. Approval; Order Granting Prelim. Approval. Further, the risks of a jury trial and appeal are common to all litigation and Class Counsel have not provided specific arguments about "special circumstances" that make further litigation risky or complex in this case. To the contrary, there has not been extensive motion practice in this case nor other past indications of "substantial obstacles" posed by Defendant. *See Dawson*, 2019 WL 7842550, at *7; *cf. Vandervort*, 8 F. Supp. 3d at 1209 (noting the defendant's "vigorous opposition," including an interlocutory appeal of the class certification

---

[4] Courts also commonly compare the proposed settlement to the potential trial recovery to evaluate the "results achieved" factor. *See, e.g., Dawson*, 2019 WL 7842550, at *6 (noting that class counsel recovered more than 22 percent of the estimated potential recovery); *Grady*, 2025 BL 112778, at *9 (noting that class counsel achieved a settlement of about six percent of the maximum possible trial recovery). As Plaintiffs here do not provide the total potential recovery, the Court cannot evaluate this aspect of the results achieved. *See* Order Den. Prelim. Approval at 16, and discussion *supra* section III.A.iii.

order and its motion for summary judgment, and awarding 33 percent).  The Court
therefore finds this factor does not support the fee award requested.

> iii.  *Skill Required and Quality of Work*

A fee award beyond the 25 percent benchmark may be justified where class
counsel "has significant experience in the particular type of litigation at issue."
*Marshall v. Northrop Grumman Corp.*, 2020 WL 5668935, at *3 (C.D. Cal. Sept.
18, 2020) (awarding 33 percent where class counsel "actually pioneer[d] complex
ERISA 401(k) excessive fee litigation").  Courts may also consider class counsel's
overall performance in managing the litigation.  *See In re OmniVision*, 559 F. Supp.
2d at 1047.  Here, Class Counsel is comprised of attorneys who focus on litigating
wage-and-hour class actions and PAGA actions, have served as attorneys in more
than a dozen employment-related putative class actions in state and federal courts
in California, and have recovered millions of dollars on behalf of thousands of
individuals in California.  Parker-Fawley Decl. ¶ 18.  Class Counsel asserts they
have been "actively performing work" since before the commencement of this case
on August 8, 2022, and "engaged in extensive settlement negotiations."  *Id.* ¶ 23,
25.

The Court recognizes Class Counsel's credentials and the effort required to
reach a settlement.  However, the Court has inadequate first-hand experience with
Class Counsel's performance given the limited motion practice in this case and the
Court's lack of insight into the mediation process.  *Cf.* Dawson, 2019 WL 7842550,
at *7 (noting class counsel's engagement in "substantial motion practice, discovery
and mediation work" and awarding 35 percent).  On these facts alone, the Court
would find this factor neutral.  *See Cuellar*, 2024 WL 83231, at *11 (finding the
"skill required and quality of work" factor to be neutral because "the Court lacks
sufficient exposure to the attorneys' overall performance needed to affirm higher
fees").  The Court, however, also notes its prior comments regarding insufficient
briefing in Plaintiffs' motions for settlement approval.  *See, e.g.*, Order Den.
Prelim. Approval at 15 ("Despite Class Counsel's apparently extensive experience
handling wage-and-hour class actions with PAGA claims, Class Counsel provides
the Court with minimal substance and argument pertaining to the factors to be
analyzed at this preliminary approval stage."); *id.* at 14 ("The Court expects Class
Counsel to thoroughly brief the appropriateness of awarding more than the 25%
benchmark, which Class Counsel has not done sufficiently in the pending
Motion.").  Considering the Court's limited experience with Class Counsel's

performance, the Court finds this factor does not support a departure from the benchmark.

### iv.    *Contingent Nature of the Fee and Plaintiffs' Financial Burden*

Departing from the 25 percent benchmark may be warranted when attorneys work on a contingency basis, especially for protracted periods of time.  *See Vizcaino*, 290 F.3d at 1050 (granting 28 percent contingency fee where lawsuit extended over eleven years and entailed hundreds of thousands of dollars of expenses).  Class Counsel took this case on a contingent basis and spent approximately 420.5 hours on the case over three years.  Parker-Fawley Decl. ¶ 30.  Class Counsel also fronted $39,063.57 in litigation costs.  *Id.* ¶ 32.  Considering these facts, the Court recognizes that Class Counsel bore the risk inherent in taking a case on a contingent basis.  Some courts consider this alone a factor favoring upward departure, while others require more protracted or time-consuming lawsuits to justify upward departure.  *Compare Dawson*, 2019 WL 7842550, at *7 ("Class Counsel have spent almost three years on this litigation, which they took on a contingent basis . . . Since they have faced the risk of walking away with nothing, the Court finds that this factor favors an upward departure."), *with Cuellar*, 2024 WL 83231, at *11 ("Here, the case had been ongoing for three-and-a-half years at the time of the hearing. And the three attorneys comprising Class Counsel say that they will have invested just over 590 hours in total . . . In view of those facts, this factor weighs against granting an upward departure.").

### v.    *Awards Made in Similar Cases*

It is not uncommon for awards in wage-and-hour class actions to exceed the 25 percent benchmark and range from 30 percent to 33.3 percent.  *See Dawson*, 2019 WL 7842550, at *7 (collecting cases); *Cuellar*, 2024 WL 83231, at *12 (same).

## 2.    <u>Lodestar</u>

Courts may apply the lodestar method as a cross-check of the percentage method, as the lodestar "measures the lawyers' investment of time in the litigation" and "may provide a useful perspective on the reasonableness of a given percentage award."  *Vizcaino*, 290 F.3d at 1050.  The lodestar method calculates the fee "by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate."  *Laffitte*, 1 Cal. 5th at 489.  The court may increase or decrease the lodestar amount by applying a positive or negative "multiplier" to "take into

account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Id.*

Here, Class Counsel have spent 420.5 hours litigating the case and finalizing the settlement. Parker-Fawley Decl. ¶ 30, Ex. A. Class Counsel asserts that a reasonable blended hourly rate of compensation at the rate of at least $850 per hour should apply to this case. *Id.* ¶ 31. According to Class Counsel's calculation, the base lodestar value of work performed is $357,683, which would require a multiplier of 4.38 to equal the requested fee of $1,566,634.30. *Id.*

The lodestar cross-check first requires the Court to determine whether the hourly rates sought by counsel are reasonable. "[T]he district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). This determination "is not made by reference to rates actually charged [by] the prevailing party." *Id.* The fee applicant bears the burden of showing that "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (cleaned up). Class Counsel lists several cases in the Los Angeles Superior Court where courts awarded attorney's fees representing hourly rates of more than $850. Parker-Fawley Decl. ¶ 31. Though on the higher end, the rate of $850 per hour is not excessively higher than rates approved by courts in this district. *See Hang*, 2024 WL 2191930, at *13 (accepting hourly rates ranging from $675 to $825 for partners practicing labor and employment law in the Central District of California). The Court also finds that the billing records Class Counsel attached to the Motion offers a satisfactory accounting of the attorney work hours on this case. *See* Parker-Fawley Decl. Ex. A.

The Court next considers whether the requested lodestar multiplier of 4.38 is reasonable. Lodestar multipliers awarded in wage-and-hour class actions commonly range from between 1.0 to 4.0. *See Hang*, 2024 WL 2191930, at *13 (collecting cases); *see also Vizcaino*, 290 F.3d at 1051 n. 6 (finding that multipliers most commonly range between 1.0 and 4.0, with a majority in the 1.5 to 3.0 range). As discussed in the context of the percentage method, Class Counsel have not demonstrated factors regarding the complexity of this case, the risks involved, or the length of the litigation to justify a departure from the benchmark. A multiplier of 4.38, which exceeds the typical range, is similarly unwarranted. Attorney's fees

consisting of the benchmark 25 percent of the gross settlement fund, or
$1,119,024.50, would result in a multiplier of 3.13, which is within the typical
range and appropriate to account for the risks taken in this case.[5]  *See Ponce v.
CH2M Hill Eng'rs, Inc.*, 2025 WL 2553337, at *3 (C.D. Cal. Aug. 19, 2025) ("An
award of 25% resulting in a multiplier of 4 is more than sufficient to take account
of the relatively small risk involved when experienced counsel evaluate which
wage and hour matters to accept.").  Indeed, a 3.13 multiplier exceeds those in
other wage-and-hour class action settlements in this district.  *See, e.g.*, *Hang*, 2024
WL 2191930, at *13 (approving attorney's fees representing a multiplier of
approximately 2.75); *see also Reyes v. Experian Info. Sols., Inc.*, 856 F. App'x 108,
110 (9th Cir. 2021) (finding that a 25 percent award, representing a 2.88 multiplier,
was similar to awards "routinely approved" by courts in the Ninth Circuit).

### 3.    Conclusion on Attorney's Fees

In summary, the Court finds that the balance of factors under the percentage
method do not justify departure from the benchmark.  The Court also finds that the
proposed lodestar multiplier of 4.38 is excessive.  Balancing these considerations
in its discretion, the Court finds that Class Counsel has not presented facts
justifying an award of 35 percent; additionally, the lodestar cross-check confirms
that a 25 percent award would result in a reasonable multiplier of 3.13.

Accordingly, the Court GRANTS IN PART Class Counsel's request for
attorney's fees and awards fees of 25 percent of the Gross Settlement Amount,
equaling $1,119,024.50.

## B.    Litigation Costs

Class Counsel also requests reimbursement for $39,063.57 in litigation costs
and expenses.  Mot. at 22; Parker-Fawley Decl. ¶ 32, Ex. B.  Attorneys may
recover "reasonable expenses that would typically be billed to paying clients in
non-contingency matters."  *In re OmniVision*, 559 F. Supp. 2d at 1048 (citing
*Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)).  Class Counsel have
documented costs including filing fees, attorney service fees, court reporter fees,
mediation fees, and other necessary fees.  Parker-Fawley Decl. Ex. B.  Plaintiffs
note the requested reimbursement is under the maximum amount of $50,000 that

---

[5] The Court's calculation of 3.13 multiplier results from dividing $1,119,024.50 by
the product of 420.5 hours and $850 per hour.

was allocated toward reimbursement of litigation costs under the Settlement Agreement, and the savings of $10,936.43 will remain part of the net settlement amount.  Mot. at 22.

The Court finds the litigation costs adequately documented and reasonable, and therefore GRANTS Plaintiffs' request for reimbursement of $39,063.57 in litigation costs.

## C.    Service Awards

Plaintiffs also request service awards of $15,000 for Johnson, $12,500 for Kennedy, and $7,500 for Walker.  Mot. at 25.  Plaintiffs contend the service awards are warranted because they spent considerable time and effort to produce documents and prepare for depositions.  Mot. at 23; *see also* Renewed Motion for Preliminary Approval at 16, Dkt. No. 61 (stating that Johnson spent approximately 99 hours working on this action, Kennedy spent approximately 87 hours, and Walker spent approximately 50 hours).  Plaintiffs also note they took on risk by suing their former employer or, in Johnson's case, current employer.  Mot. at 23–24.

Service awards, or incentive payments, are discretionary and "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez*, 563 F.3d at 958–59.  District courts must individually evaluate service awards to ensure they are reasonable, using factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation, and reasonable fears of workplace retaliation."  *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2001) (cleaned up and citation omitted).  The proposed service award is also considered in terms of "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment."  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015) (quoting *Staton*, 327 F.3d at 977).  Excessive incentive awards "may put the class representative in a conflict with the class" and may indicate an agreement "was reached through fraud or collusion."  *Rodriguez*, 563 F.3d at 960; *Staton*, 327 F.3d at 975.

In its Order Denying Preliminary Approval, the Court found that the proposed service awards provided Plaintiffs with preferential treatment and raised a substantial risk that they will not fairly represent the class. Order Den. Prelim. Approval at 20. Given the current estimated average individual settlement payment of $812.99, Johnson's recovery would be more than eighteen times the average, Kennedy's more than fifteen times the average, and Walker's more than nine times the average. *See* Phoenix Decl. ¶ 15. The Court considered Plaintiffs' arguments about the hours worked and risks taken in this action but noted that courts have found proposed service awards excessive when they outsize the average class member's award by similar factors. *See* Order Den. Prelim. Approval at 19.

Courts within the Ninth Circuit have approved service awards commonly ranging from $2,000 to $10,000, with $5,000 being presumptively reasonable. *See Oliveira v. Language Line Servs., Inc.*, 767 F. Supp. 3d 984, 1008 (N.D. Cal. 2025). Higher amounts are more appropriate in cases involving much larger settlement amounts. *See id.* (collecting cases involving settlements of $45 million and more than $76 million). Considering all the circumstances of this case and Plaintiffs' varying levels of involvement,[6] the Court concludes that the proposed service awards are excessive. *See McDonald v. CP OpCo, LLC*, 2019 WL 2088421, at *8 (N.D. Cal. May 13, 2019) (reducing $15,000 award to $10,000, where $15,000 represented approximately seven times the average recovery). A service award of up $10,000, approximately twelve times the average individual recovery, is in line with awards in other wage-and-hour class actions in this district. *See Hang*, 2024 WL 2191930, at *15 (approving award of $10,000 for the first named plaintiff because his name appeared in the case caption, but reducing award for the other named plaintiff to $7,500).

Accordingly, the Court GRANTS IN PART Plaintiffs' request for service awards and awards $10,000 to Johnson, $7,500 to Kennedy, and $5,000 to Walker.

---

[6] For instance, the Court notes that (1) Johnson took on more risk by suing his current, rather than former, employer and by having his name appear in the case caption, Mot. at 23, and (2) Walker joined the case as a named plaintiff later than Johnson and Kennedy, Parker-Fawley Decl. ¶ 17.

### D.    Administration Costs

The Administrator requests an estimated $18,000 total in notice and settlement administration costs.  Mot. at 22; Phoenix Decl. ¶ 18.  An invoice from the Administrator documents the costs incurred or expected to be incurred to mail class notice to each Class Member and provide CAFA notice, calculate and disburse class action settlement payments and PAGA payments, complete tax reporting and necessary reports, and other administrative services.  Phoenix Decl. Ex. C.  Having reviewed the invoice, the Court finds the administration costs are reasonable.

The Court therefore GRANTS the Administrator's request for $18,000 in administration costs.

## VI.    CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1.  Plaintiffs' motion for final approval of class action settlement and PAGA settlement is GRANTED.  Defendant shall pay a gross settlement amount of $4,476,098, to be distributed under the terms of the Settlement Agreement and consistent with this Order.
2.  Plaintiffs' motion for attorney's fees and costs is GRANTED IN PART.  The Court awards Class Counsel 25 percent of the gross settlement amount, amounting to $1,119,024.50, in attorney's fees and $39,063.57 in reimbursement for litigation costs and expenses.
3.  Plaintiffs' motion for class representative service awards is GRANTED IN PART.  The Court awards $10,000 to Johnson, $7,500 to Kennedy, and $5,000 to Walker.
4.  Plaintiffs' motion for administration costs is GRANTED.  The Administrator shall receive $18,000 in administration costs.

Class Counsel is ORDERED to file a proposed final judgment within five (5) days of entry of this Order.

## IT IS SO ORDERED.